UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| In re: )<br>)<br>TRIANGLE MAINTENANCE )<br>SERVICE, LLC )<br>)<br>Debtor. ) | Case No. 11-15142 |

| | |
|---|---|
| TRIANGLE MAINTENANCE )<br>SERVICE, LLC )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>LIBERTY MUTUAL )<br>INSURANCE COMPANY )<br>)<br>Defendant. ) | A.P. No. 12-01020 |

## MEMORANDUM OPINION AND ORDER

This adversary proceeding is before the Court on the Motion for Summary Judgment (the "Motion") filed by defendant Liberty Mutual Insurance Company ("Defendant") on December 13, 2012 (A.P. Doc. 19). The plaintiff/debtor Triangle Maintenance Service, LLC ("Plaintiff") filed a Response to Defendant's Motion for Summary Judgment (the "Response") on January 23, 2013 (A.P. Doc. 23). This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order Of Reference Dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A),(E) and (O).[1] The Court must decide

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7052. To the extent it may be determined that this Court does not have the power to enter final judgment with regard to the issues addressed herein, this

1

whether the Complaint was filed after the statute of limitations had run, and therefore, whether Defendant's Motion for Summary Judgment is due to be granted. No hearing on the Motion is necessary. The Court has considered the pleadings, the evidence, the briefs and the law, and finds and concludes as follows.

## I. FINDINGS OF FACT

The following facts are undisputed. Plaintiff is a Mississippi limited liability company doing business in Lowndes County, Mississippi, and is the debtor in the above-styled case. Panola Construction Company ("Panola") entered into a contract with Hinds County Community College ("Owner") to build the school's new multipurpose facility in Rankin County, Mississippi (the "Project"). Panola then entered into a subcontract with Plaintiff to furnish labor and materials for the Project. In accordance with § 31-5-3 *et seq.*, of the Mississippi Code, Panola, as principal on a construction project with a state entity, entered into a bonding contract with Defendant whereby Defendant acted as a surety for construction of the Project. When Panola later failed to pay Plaintiff, Plaintiff made a claim on the bond.

Plaintiff filed a chapter 11 bankruptcy petition with this Court on November 3, 2011. On February 17, 2012, Plaintiff filed its Complaint, seeking payment under the bond and alleging that Plaintiff is owed $135,766.46 by Panola for Plaintiff's work on the Project. (A.P. Doc. 1).[2]

The sole factual dispute, and the issue on which resolution of the Motion depends, is whether the last date Plaintiff performed labor on the Project was February 11, 2011, or February

---

Memorandum Opinion may be considered proposed findings of fact and conclusions of law and/or a report and recommendation.

[2] While the parties dispute the amount owed, this dispute has no bearing on the statute of limitations issue before the Court. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)

2

18, 2011. For the reasons set forth below, the Court finds that the last date on which the Plaintiff performed labor or supplied materials to Panola remains uncertain. As there remains a genuine issue as to this material fact, summary judgment is not due to be granted.

## II. CONCLUSIONS OF LAW

### A. Standard

Rule 56 of the Federal Rules of Civil Procedure governs the process by which a court will grant or deny a motion for summary judgment.[3] Summary judgment is only appropriate if no genuine issue as to any material fact exists and if the movant is entitled to a judgment as a matter of law. FED. R. CIV. P. 56; *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). The United States Supreme Court has made clear that summary judgment is appropriate:

> after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Chan v. Coggins,* 294 F. App'x 934, 939 (5th Cir. 2008).

A court considering a motion for summary judgment must view evidence and make all inferences in the light most favorable to the non-movant. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). As the Fifth Circuit and Supreme Court have made clear, the moving party is responsible for establishing sufficient evidence that would show that there is no genuine issue of material fact before the court looks to the non-moving party to demonstrate that there does in fact remain a genuine issue for trial.

> [T]he party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not *negate* the elements of the

---

[3] Federal Rule of Bankruptcy Procedure 7056 incorporates without modification of Rule 56 of the Federal Rules of Civil Procedure.

3

nonmovant's case... If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(emphasis original); *citing Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 885-86, 110 S.Ct. 3177, 3187, 111 L.Ed.2d 695 (1990).

### B. Statute of Limitations

The threshold issue raised in the Motion is whether this action is time-barred by the applicable statute of limitations. The relevant statute provides, in relevant part:

> (b) When suit is instituted on a payment bond given in accordance with this chapter, it shall be commenced within one (1) year after the day on which the last of the labor was performed or material was supplied by the person bringing the action and not later.

MISS. CODE ANN. § 31-5-53 (West). The original text of the law included a variety of possible commencement dates from which the statute of limitations would begin to run. 1994 Miss. Laws Ch. 626, § 4 (H.B. 875), *amended by* 2004 Miss. Laws. Ch. 452, § 1. However, the law was amended in 2004 to its current form, with the goal "to clarify...the time and manner for bringing suits on such bonds" by eliminating the various dates that possibly started the running of the statute, and replacing them instead with one date: the last date that a subcontractor performed work on the project. 2004 Miss. Laws Ch. 452, § 1; (A.P. Doc. 20, Pg. 3). Neither party disputes that the one (1) year statute of limitations applies in this case. The dispute is concentrated on the specific date of last performance, which is the date that the statute of limitations began to run.

Plaintiff filed its complaint on February 17, 2012 (A.P. Doc. 1). In the Motion, Defendant asserts that "[t]he last date on which Triangle performed labor or supplied material to

4

Panola on the Project was no later than February 11, 2011." (A.P. Doc. 19, Pg. 2). Accordingly, Defendant contends that Plaintiff missed the one year statute of limitations by 6 days.

In its Response, Plaintiff alleges instead that the last day work was performed was not February 11, 2011, but was February 18, 2011. Therefore, by its calculations, Plaintiff met the statute of limitations by one day. (A.P. Doc. 23).

### C. Last Date of Work Performed

In support of its Motion, Defendant relies on a limited body of law interpreting Mississippi Code § 35-5-53 and the Miller Act. 40 U.S.C. §§ 3131-3134. The Miller Act, the federal law from which the Mississippi statute is derived, requires that primary contractors on government construction contracts post bonds guarantying performance of their duties under the contract as well as payment to subcontractors and suppliers. As Defendant points out, the Mississippi statute's language was "taken verbatim from... the Miller Act addressing the rights of persons furnishing labor or material to subcontractors engaged in public works projects." Further, the Mississippi legislature has repeatedly kept amendments to § 35-5-53 consistent with those made to the Miller Act. *Key Constructors, Inc. v. H&M Gas Company*, 537 So.2d 1318, 1321 (Miss. 1989). While cases specifically addressing the Mississippi statute are somewhat sparse, those interpreting the Miller Act and its statute of limitations are more plentiful, and offer valuable guidance.

The one year limitation is jurisdictional, and compliance with the limitation period is a condition precedent to maintaining an action. *See United States for the Benefit of Celanese Coatings Co. v. Gullard*, 504 F.2d 466 (9th Cir. 1974); *United States ex rel. Dover Elevator Co. v. General Ins. Co. of America*, 339 F.2d 194 (6th Cir. 1964); *United States for Use and Benefit of Soda v. Montgomery*, 253 F.2d 509 (3rd Cir. 1958); and *United States v. Seaboard Sur. Co.*,

5

201 F. Supp. 630 (N.D. Tex. 1961). Other litigation, including the pendency of a bankruptcy petition, does not automatically toll the statute, especially given that the Plaintiff in this case is the debtor, and the stay therefore would not apply to bar the action. *See United States for Use and Benefit of American Bank v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253 (5th Cir. 1991) (bankruptcy statute providing two-year extension for limitations period which have not expired at time bankruptcy petition is filed did not apply to extend one-year Miller Act limitations period for action brought by creditor). Thus, the last day on which Plaintiff must have supplied labor on the Project in order to have been within the statute of limitations was February 18, 2011 or later.

Defendant cites to those decisions from the Fifth Circuit and beyond which clarify procedures for establishing the final date of labor performed from which the statute of limitations will run. In *T.L. Wallace*, the Southern District of Mississippi stated that, "[a]s a general rule, remedial or corrective work, or inspection of work already completed, does not fall within the meaning of 'labor' and will not extend the one-year limitations period." *T.L. Wallace*, 790 F.Supp. at 683. Further, the *Wallace* court clarified that the exclusion of remedial work held true, "even if performed as a contractual duty, if such remedial or corrective work was neither significant nor crucial to the operation of functioning of the project." The Fifth Circuit has echoed this same rule in a number of cases, including *General Insurance Company of America v. United States for Use and Benefit of Audley Moore & Son*, 409 F.2d 1326 (5th Cir. 1969) in which the court held that a party can perform corrective work under a contract without it constituting "labor" for purposes of the one year statute. *Id.*, at 1327; *see also, United States for Use and Benefit of Gulf States Enterprises, Inc. v. R.R. Tway, Inc.*, 938 F.2d 583 (5th Cir. 1991) (subcontractor could not use its own discretionary act to its advantage in delaying running of the statute); *Johnson Service Company v. Transamerica Insurance Company*, 485 F.2d 164, 173 (5th

6

Cir. 1973)("Defendants are correct in their statement of the general rule that 'repairs' are not sufficient to toll the notice period.").

Plaintiff does not dispute the exclusion of remedial or corrective work from the statute of limitations analysis. (A.P. Doc. 24, Pg. 2). Instead, Plaintiff maintains that the final day of work on the Project was not February 8, but February 18, 2011. According to the Response, work done on February 18 was not corrective in nature, but instead was essential to the overall project, and would therefore qualify the Complaint as meeting the statute of limitations. (A.P. Doc. 24, Pg. 3).

### D. Evidentiary Submissions

As the movant in a motion for summary judgment, the Defendant bears the initial burden of demonstrating to the Court that there is no genuine issue of material fact and that it is thus entitled to a grant of summary judgment as a matter of law. As the U.S. Supreme Court has repeatedly held:

> [A] party seeking summary judgment *always bears the initial responsibility* of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (*emphasis added*).

Defendant supports its contention that this suit is outside the statute of limitations period with several documents that ostensibly aim toward proving that the Complaint was filed after the statute of limitations had run. The Court finds, however, that most of the Defendant's exhibits do not actually pertain to the limited issue with which this Court is concerned at this time. As the Supreme Court held in *Anderson v. Liberty Lobby Inc.*,

> as to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing

7

> law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 248.

Defendant first supports its contention that this suit it barred by the statute of limitations with Exhibits 1 and 2, which are, respectively, the subcontract between Panola and Plaintiff, and the Performance and Payment Bonds between Panola and Defendant. (A.P. Doc. 19, Ex. 1 and 2). Neither party disputes that Plaintiff subcontracted with Panola to do work on the Project, nor is it disputed that Panola entered into the standard bonding contracts with the Defendant as is required under Mississippi law.

Defendant's Exhibits 3 through 6 do not speak to the limited issue before the Court. (A.P. Doc. 19, Ex. 3-6). Defendant's Exhibit 3 is a letter from Panola to Plaintiff, informing Plaintiff that Triangle employee Scott Hannon will no longer be allowed at the Project site. The letter, signed by William F. Burnett, President of Panola, states that, "Mr. Hannon is unable to work with or communicate in a professional, harmonious and courteous manner with PCC personnel... Please understand that PCC is not changing, subsidizing, or terminating TMS subcontract." (A.P. Doc. 19, Ex. 3). The letter is addressed to Mr. Stuart Smith at Triangle Maintenance Services, L.L.C. and is dated December 28, 2010. *Id.*

Exhibit 4 is another letter from Panola to Plaintiff; "This letter is to inform you that Panola Construction Company Inc. (PCC) requests Triangle Maintenance Service L.L.C. to man the project known as Multi-Purpose Center Hinds Community College..." (A.P. Doc. 19, Ex. 4). The letter goes on to claim that "[i]n light of damages caused by TM employees, to accepted and finished work, on January 26, 2011, it would be mutually beneficial to prevent other incidents." *Id.* The letter is purportedly written and signed by Jeffery Papason, Vice President of Panola, and addressed again to Mr. Stuart Smith. It is dated January 27, 2011. *Id.* As with Exhibit 3,

Exhibit 4 also makes clear that the letter is not intended to alter or terminate the subcontract between the Plaintiff and Panola.

Defendant's Exhibit 5 is a letter between Panola and Plaintiff, dated February 9, 2011, from Jeffery Papason to Stuart Smith. (A.P. Doc. 19, Ex. 5). In Exhibit 5, Panola informs Plaintiff that upon review of the Plaintiff's subcontract on the Project, Panola has concluded that, "in light of incomplete, damaged, or unacceptable work, PCC shall continue to supplement TM with completion of subcontracted scope-of-work." *Id.* The letter also states that "[a]ll remaining subcontract funds ($135,684.96), not dispersed to TMS, and shall be held [sic]." *Id.* As with the other three letters, Exhibit 5 includes the statement that the letter is not meant to represent a change or termination of the contractual relationship between the parties. *Id.*

Finally, Defendant's Exhibit 6 is a letter purportedly written and signed by Scott Hannon, "Managing Member" of Triangle Maintenance, to Jeffery Papason, dated February 10, 2011. (A.P. Doc. 19, Ex. 6). The letter addresses, among other things, the various concerns vocalized by Mr. Papason in his earlier letters to the Plaintiff: "I have reviewed your letter of February 9, 2010 regarding our subcontract agreement... As you are well aware from previous correspondence, supplementation of my workforce has not been required not is it required at this point..." *Id.*

Defendant's Exhibits 3 through 6 all present similar problems for the Court. The letter correspondence between Panola and Plaintiff are all unauthenticated. "It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment." *Perez v. Alcoa Fujikura, Ltd.*, 969 F.Supp. 991, 997-98 (W.D. Tex. 1997). In order to be considered by the court, "'documents must be authenticated by and attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits

could be admitted into evidence'." *Id., quoting Burnett v. Stagner Hotel Courts, Inc.,* 821 F.Supp. 678, 683 (N.D. Ga. 1993) *aff'd* 42 F.3d 645 (11th Cir. 1994); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550-51 (9th Cir. 1989). More importantly, however, while this series of correspondence may show the deteriorating relationship between the Plaintiff and Panola, it does not speak to the ultimate issue before the Court; namely, the last day on which work was performed by Plaintiff on the Project.

Defendant's Exhibit 7 appears to be an internal email among employees of Panola. (A.P. Doc. 19, Ex. 7). The email, purportedly sent by Panola employee Ronnie Stepp to fellow Panola employees Jeff Papasan and Bill Burnett, is dated Friday, February 11, 2011. The email has a subject line reading "TMS" and simply reads: "Looks like they may not return. Do we lock up what is here or let it pass. Rickey ask ???? [sic] Ronnie." As with the other exhibits offered by the Defendant, this email is likewise unauthenticated. If the Court were able to look past the authentication issue, it appears as though the sender of the email was planning for the contingency that Plaintiff may not return or perform further work on the Project. The indefiniteness of the email renders it insufficient to conclusively determine that Plaintiff was not planning on, or did not in fact, return to the Project.

Similarly, Defendant's Exhibit 8, a letter dated February 18, 2011, whereby Panola terminated the subcontract with Plaintiff, does not resolve the issue. (A.P. Doc. 19, Ex. 8). The letter terminating the subcontract may show that the contractual relationship between the parties came to a definite end that day, but it does not prove the date of last performance.

Lastly, Defendant's Exhibit 9 is the affidavit of Rickey Moore. (A.P. Doc. 19, Ex. 9). According to the sworn statements in the affidavit, Rickey Moore is an employee of Panola, and was a construction supervisor for the Project. *Id.* During the ongoing construction on the

Project, Mr. Moore was typically present at the job site while work was being completed. According to his testimony, Mr. Moore worked with Ronnie Stepp of Panola, as well as various employees of the subcontractors on the Project, including the Plaintiff. *Id.* Further, during the Plaintiff's work on the Project, there were apparently concerns as to whether Plaintiff had an adequate number of employees on site and whether the quality of Plaintiff's work would be acceptable to the Owner. *Id.* at 2. According to Mr. Moore, to the best of his memory and recollection, Plaintiff left the job sometime before February 11, 2011 and Mr. Moore is "not aware of any employee of Triangle Maintenance working on the project after that date." *Id.*

The affidavit of Rickey Moore is the strongest evidentiary submission of the Defendant. Exhibit 9 is the only evidence submitted by the Defendant that bears on the ultimate question in the Motion (the date of last performance by Plaintiff on the Project) and that could potentially shift the burden to the non-movant. "The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact." *T.L. Wallace,* 790 F. Supp. at 682; *quoting Celotex,* 477 U.S. at 323. It is well settled that the movant, the Defendant in this case, must pass this threshold before the court will shift the burden to the non-moving party. As the Supreme Court held in *Celotex* – reiterating the language from the Courts earlier ruling in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) –

> Rule 56(e) of the Federal Rules of Civil Procedure... establish[es] that "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact."

*Celotex,* 477 U.S. at 322; (emphasis original).

11

In a companion case, *Triangle Maintenance Service, LLC v. Liberty Mutual Insurance Co. (In re Triangle Maintenance, LLC)*, 2013 WL 960356, (Bankr. N.D. Miss. Mar. 3, 2013) this Court found that Defendant had submitted sufficient evidence to shift the burden of proof as contemplated by the Supreme Court in *Celotex*, and the Southern District Court of Mississippi in *T.L. Wallace*. However, the material difference in that case was that Defendant relied on business records produced by Plaintiff to determine the last day work performed by Plaintiff. Likewise, the affidavits in that case referenced records kept in Panola's regular files. Any such business records are noticeably absent in this case, and no reference is made to any in the affidavit of Rickey Moore. Instead, *this* affidavit merely states that Mr. Moore is "not aware" of any labor being performed after February 11, 2011. (A.P. Doc. 19, Ex. 9, Pg. 2). The lack of knowledge of one worker is not sufficient to shift the burden to Plaintiff to defeat the Motion.

In response, Plaintiff has submitted its own exhibits, including affidavits, a job diary, and payroll records. (A.P. Doc. 23, Ex. 1 – 7). Plaintiff's Exhibit 1 is the affidavit of Scott Hannon (the "Affidavit")(A.P. Doc. 23, Ex. 1). The entire body of the Affidavit provides only:

> PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the above county and state, the within named SCOTT HANNON, who after being by me duly sworn and deposed, stated on oath that the facts stated in Plaintiff's Response to Defendant's Motion for Summary Judgment are true and correct to the best of his knowledge, information, and belief.

(A.P. Doc. 23, Ex. 1). There is no background information offered, nor any explanation of Scott Hannon's involvement, experience with, or knowledge of, the Project. No affirmative facts are set forth in the Affidavit and no other documents are referenced.

Plaintiff's Exhibit 2 is the affidavit of Curt Skelton, who – according to Plaintiff's Response – was Plaintiff's foreman on the job site on February 18, 2011. (A.P. Doc. 23, Pg. 2)(A.P. Doc. 23, Ex. 2). The text of the affidavit mirrors that of Scott Hannon verbatim.

12

However, according to the Response, Plaintiff qualifies this affidavit as testifying to the fact that Plaintiff performed significant labor on the Project on February 18, 2011. (A.P. Doc. 23, Pg. 2). Presumably, Plaintiff interprets the statement in the affidavit that "the facts stated in Plaintiff's Response...are true and correct" (A.P. Doc. 23, Ex. 2) as specifically and necessarily stating that significant labor was performed on that day.

Rule 56(e) of the Federal Rules of Civil Procedure provides in pertinent part that "[s]upporting...affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED.R.CIV.P. 56(e); *see also Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991). Absent from the affidavits of Scott Hannon and Curt Skelton are any of the 56(e) requirements, such as affirmative evidence that the affiant is competent to testify, or facts as would be admissible at trial. Several courts have held that pleadings based upon an affiant's "information and belief" are "insufficient for the purposes of opposing a motion for summary judgment." *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991); *see also Canada v. Blain Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987); *Perez*, 969 F.Supp. at 997-98 (affidavits must meet the requirements of Rule 56(e) in order to be considered in support of or in opposition to a motion for summary judgment). Without meeting the minimum requirements as set forth in Rule 56(e), or offering any specific testimony of the affiant, Plaintiff's Exhibits 1 and 2 offer no authenticated evidence that can be considered by this Court.

As already stated in reference to Defendant's exhibits, "It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment." *Perez*,

969 F.Supp. at 997. Plaintiff's remaining exhibits are unauthenticated and not referenced in the affidavits.

Summary judgment is only appropriate if no genuine issue as to any material fact exists and if the movant is entitled to a judgment as a matter of law. FED. R. BANKR. 7056; *Moore*, 233 F.3d at 874. In the aforementioned companion case, the Court found that the Defendant's motion for summary judgment, based on a time-bar by the one year statute of limitations, was due to be granted. *In re Triangle Maintenance, LLC*, 2013 WL 960356. The Defendant's Motion for Summary Judgment was based on evidence that was produced and provided by the Plaintiff—namely, payroll records which demonstrated that the last day of non-remedial work done by Plaintiff's was in fact outside the one-year statutory period. In that companion case, this Court found that the Plaintiff's Response offered only exhibits that were unauthenticated and therefore outside the scope of appropriate analysis by the Court. Furthermore, this Court held that even if it could look past the procedural shortcomings of the Plaintiff's evidentiary submissions, there was nothing in the filings that could be construed to demonstrate that the Plaintiff had done non-remedial work on the project in question within the year leading up to their complaint. The Defendant offered evidence demonstrating that there was no genuine issue as to any material fact, and the Plaintiff failed to respond with any admissible evidence to show the contrary.

However, despite the similar inadequacies of the Plaintiff's evidence in the present case, the Defendant still bears the initial burden of proof. Stated another way, the Court does not even reach the stage of considering Plaintiff's evidence unless the Defendant, as the moving party, first provides sufficient evidence that could demonstrate an entitlement to summary judgment in its favor. *Celotex*, 477 U.S. at 323. Despite the similarities between this case and its companion

– in which the Court found that summary judgment in favor of the Defendant was appropriate – the Court does not reach the same conclusion in this case. As already stated, the majority of Defendant's exhibits do not actually speak to the ultimate issue. Instead, they merely demonstrate a deteriorating relationship between Plaintiff and Panola, and the ultimate termination of their contractual relationship. The only evidence speaking to the statute of limitations issue – the affidavit of Rickey Moore (A.P. Doc. 19, Ex. 9) – is too indefinite and inconclusive to effectively shift the burden to Plaintiff. Even without admissible, authenticated evidence submitted on behalf of the Plaintiff in its Response, "[s]ummary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists." *T.L. Wallace*, 790 F.Supp. at 683. "The burden of proof falls upon the party seeking the summary judgment, and all reasonable doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980); *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980).

### III. CONCLUSION

As the 5th Circuit held in *Little*, "[i]f the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075. Based on these finding and conclusions, summary judgment based on the statute of limitations is not appropriate in this case. Accordingly, it is hereby

**ORDERED, ADJUDGED** and **DECREED** that the Motion for Summary Judgment is **DENIED.**

SO ORDERED April 3, 2013.

Jason D. Woodard
United States Bankruptcy Judge